PHEBE S. CURTIS, *Adm'x, versus* SYLVANUS C. BLANCHARD.

The plaintiff's intestate was a part owner of a vessel, against which, at the time of his decease, were certain outstanding unpaid bills, charged to the vessel and owners. The defendant had been ship's husband; and, after the decease of her intestate, the plaintiff, *as executrix,* gave him special authority, as her agent, to sell the share of the vessel belonging to the estate. This action was for the proceeds of the sale, *and it was held :* — That the defendant had no right to appropriate the proceeds to the payment of the demands against the vessel and owners, but that he must account therefor to the plaintiff.

THIS was an action against the defendant as surviving partner of the firm of Blanchard & Smith. The facts are substantially stated in the marginal note, and also in the opinion of the Court.

*Fessenden & Butler* argued for plaintiff : —

The case finds that the defendant's firm, as agents of plaintiff, made sale of one-sixth part of the vessel, and received the proceeds thereof. Not having any claim in set-off themselves, and not being personally liable for any debts of the vessel, it is difficult to understand on what principle they withhold the proceeds from the plaintiff.

The only reason assigned seems to be that the other owners of the vessel would not consent to their payment, and directed the same to be appropriated in another direction.

1. It was the clear duty of the defendant's firm to account

to their principal for said proceeds, without asking the consent or taking the direction of any third person.

An agent is not permitted to set up any adverse title or claim of a third person, to defeat or prejudice the right of his principal. Story on Agency, p. 207, § 217, and cases cited in note.

An agent must account to his principal, and cannot set up the *jus tertii* in an action of his principal against him. *White* v. *Bartlett*, 9 Bingham, 378, and cases cited.

The fact that defendant's firm were also agents of the other owners does not alter the case. The agencies were entirely separate and independent.

It is to be noticed that the authority, to sell the intestate's portion of said vessel, did not result from any powers of defendant's firm as ship's husband, even if they continued such, as respects said portion after intestate's death, but from a special agency conferred upon them by plaintiff as administratrix.

2. But the other part owners had no lien or claim upon, or any authority over said proceeds.

" Partners, as such, may be ship owners, but, generally, part owners are tenants in common." MORTON, J., in *French* v. *Price*, 24 Pick. 19.

There may be a partnership, as well as a co-tenancy, in a vessel. When a person is to be considered as part owner, and when a partner, in a ship, depends upon circumstances. " The former is the general relation between ship owners, and the latter is the exception, and it is required to be shown specially." MELLEN, C. J., in *Harding* v. *Foxcroft*, 6 Green. 77.

In *Phillips* v. *Purington*, 15 Maine, 427, it was remarked, that, the usual relation of part owners of a vessel is that of tenants in common, but they may become partners. See 3 Kent, (5th ed.,) 155; also 38 Maine, 246, where the distinction between part owners and partners is considered and pointed out.

In this case it is not " specially shown," and it will not be pretended that the co-owners of the vessel were partners.

Indeed, it is specially stated that the outstanding debts against her were contracted while she was engaged in the general freighting business.

Where there is no special relation of partnership existing, and they are merely part owners, one part owner has no lien on the share, or the proceeds of the sale of the share of another, and consequently has no right to require said proceeds to be applied to the payment of the joint debts contracted on account of the vessel.

This arises from the distinction between the relation of part owners and partners, and has been directly decided in the well considered case of the *Larch,* 2 Curtis, 427 – 433. All the cases which tend to show any different doctrine are those in which the element of partnership is mingled with that of part ownership, and they are all cited in the case of the *Larch.*

If a co-tenancy in a vessel constituted a partnership, all the incidents of a partnership should follow, and the only way the other owners could assume the control and management of the joint property would be to file a bond in the probate office, according to c. 69 of R. S.   *Cook* v. *Lewis & al.,* 36 Maine, 340.

*B. Freeman,* for the defendant, contended :—

1. That the defendant, having been ship's husband when the debts were contracted, and the demands being against the vessel, had the right to appropriate the proceeds of the sale to the payment of them.   As to these claims the several part owners constituted, in law, but *one person.*   They were responsible, *in solido,* as partners.   3 Kent's Com. 156 ; Parsons' Mercantile Law, 337.

2. The defendant sold the whole vessel, by authority given to him therefor by all the owners.   And, therefore, in the absence of any express promise to account to them severally, he is not responsible to them severally.   The sale was entire, and all the part owners should have joined in the action to recover the proceeds.   Abbot on Shipping, 92 ; *Robinson*

v. *Cushing*, 11 Maine, 480; *Blanchard* v. *Dyer*, 21 Maine, 111.

3. The defendant holds the proceeds of the entire sale for the benefit of all the owners, one of whom is represented by the plaintiff. The action, therefore, is equivalent to a suit by one part owner against another, and cannot be maintained. *Maguire* v. *Pingree*, 30 Maine, 508; *Hardy* v. *Sprowle*, 33 Maine, 508; *Dodge* v. *Hooper*, 35 Maine, 536.

4. The defendant was the common agent of all the owners when the debts were contracted; the funds in his hands were the property of all the owners, and, as their agent, he had the right to appropriate them to the payment of the debts. His only liability is in a joint action, for the balance remaining after the debts are paid. Chitty on Pleading, 39; *Sheppard* v. *Richards*, 2 Gray, 424.

The opinion of the Court was drawn up by

Tenney, C. J.—This suit is for the recovery of the proceeds of the sale of one-sixth part of the bark " A. G. Hill," and is submitted on the following agreed facts: —

The plaintiff's intestate was master of the bark in his life time, and, at the time of his death, was the owner of one-sixth part thereof. He died in July, 1856, and the plaintiff was duly appointed administratrix of his estate, which was represented insolvent, and she was duly licensed by the probate court to make sale of the portion of the vessel belonging to the estate. The whole vessel was sold at the same time, by Blanchard & Smith, who had been ship's husband at the time of the decease of the intestate, and who have since acted as the agents of the other owners, in closing up the affairs of the bark. The agency given by the plaintiff to the firm to sell the bark was distinct from that under which they sold the parts belonging to the other owners; and the plaintiff, after the sale, executed a bill of sale of the portion sold under her authority. The sum received by Blanchard & Smith for the whole vessel was $5250, which came into their hands, Dec. 10, 1856. Blanchard & Smith had no interest in

the vessel, as owners, but the defendant, as surviving partner of the late firm, remains the agent of the owners of the part of the vessel in which the intestate had no interest, for the purpose of closing up their concerns therein. Before the death of the intestate, the owners were six in number, having unequal shares in the vessel. They were indebted, at the time of the sale, on account, in bills for disbursements, commissions, supplies, &c., to third persons, contracted before the decease of the intestate, while she was engaged in general freighting business, extending back for several years, amounting to sufficient to absorb the proceeds of said sale, and the previous earnings of the vessel; these bills were charged to the vessel and owners, and Blanchard & Smith were not liable therefor. These claims, and those between the several part owners, are unadjusted, and the entire proceeds of the sale of the vessel and of a chronometer, have, since the sale, been applied by the defendant in payment of said unadjusted claims, by the direction of the surviving owners. The plaintiff seasonably demanded the proceeds of the sale belonging to the estate represented by her, before any part was paid as above stated, by the defendant, and objected that it should be so applied. The defendant refused to pay the plaintiff upon her demand, without consent of the other owners, which they declined to give.

It is not pretended in defence that the owners of the bark constituted a partnership. The facts disclose nothing which is an essential element in such a relation.

In the sale of the portion of the bark belonging to the estate represented by the plaintiff, the firm of Blanchard & Smith acted as her agents. They having acted at the same time as the agents of the other owners, in the sale of their respective portions of the vessel, cannot, in the least, change their relations with her, or affect their rights or obligations, existing under her authority. By accepting the agency from her to make sale of the sixth part in her charge, they were bound to account to her for the proceeds, and they cannot, effectually, set up the adverse claims of other owners to de-

feat this obligation. Story on Agency, § 217, and authorities in note (2.)

The case is before us on a statement of facts, signed by the parties, and we can assume no fact to exist, unless it makes one, agreed by the parties, or is necessarily inferrable from those admitted. It is not agreed that those having bills against the owners, charged to the vessel and owners, have a lien upon the bark, and it certainly cannot be necessarily inferred from any thing in the case. If there was a lien, it may have been waived, so that it cannot be enforced. We must treat the case as it would be treated if it was expressly agreed that, the creditors of the owners had no lien upon the bark.

If the several unadjusted claims of the respective owners, and their liability to third parties, could not be arranged and settled amicably between themselves, it is well established that suits at law for such purpose cannot be maintained. *Maguire* v. *Pingree*, 30 Maine, 508; *Knowlton* v. *Reed*, 38 Maine, 246. *A fortiori*, the plaintiff's agents appointed for the single purpose of making sale of the part of the vessel belonging to the estate, and paying the proceeds thereof to her, cannot constitute themselves receivers, withhold the money from her, and without authority from her, but against her protestation, disburse the same at their pleasure, by virtue of no decree in any process in equity, and undertake to adjust the claims of creditors and other owners, when the plaintiff had no opportunity of being heard in behalf of the estate, which she is bound faithfully to administer.

According to the agreement of the parties, the defendant is to be defaulted for the sum of $875, and interest thereon from April 1, 1857.

HATHAWAY, MAY, GOODENOW, and DAVIS, J. J., concurred.